No. 35,939

THE STATE OF KANSAS, *Appellee,* v. EMIL HOMOLKA, *Appellant.*

(145 P. 2d 156)

Opinion filed January 22, 1944.

*F. C. Norton, H. L. Smither* and *J. H. Wilson,* all of Salina, were on the briefs for the appellant.

*A. F. McCarty,* assistant county attorney, argued the cause, and *A. B. Mitchell,* attorney general, and *F. J. Brettle,* county attorney, were on briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellant was convicted of buying and receiving stolen property. He contends that the trial court erred in permitting the state to show, for the purpose of impeaching the credibility of a witness, that the witness had at one time been a ward of the juvenile court.

Conviction was upon two counts, each count alleging that the defendant had purchased several cases of butter, knowing that they had been stolen from the Jo-Mar Dairies at Salina, Kan. The principal witness for the state was Glenn Hayes, a young man not quite eighteen years old when the alleged offense occurred. In another action—with which we are not here concerned—Hayes and two sons of appellant, Leonard and Calvin Homolka, were charged with stealing the butter. We are not advised as to the outcome of that action, and this narrative implies nothing to the guilt or innocence of the accused. Leonard was twenty-one years old and Calvin about sixteen years and eight months old at the time of the alleged theft.

Hayes had been an employee of the Jo-Mar Dairies and was familiar with the warehouse where the butter was kept.

It is not necessary to review the evidence at any length. Among the witnesses for the defense were the two Homolka boys above referred to and a third brother, Lawrence Homolka, nineteen years old. The testimony of the three brothers was substantially the same. They flatly contradicted the testimony of Hayes and all three testified that subsequent to his arrest Hayes had said in their presence that he had lied when he implicated the two Homolka brothers and the father in the theft. Two of them testified as to the reasons which Hayes was alleged to have given for untruthfully implicating the Homolkas.

On cross-examination of Calvin Homolka the following transpired:

"Q. You remember I asked you yesterday whether or not you had been in any trouble before? A. Yes.

"Q. And your answer was that you had not? A. I have never been arrested before.

"Q. You have been down in the juvenile court, down here, haven't you? A. That was long ago.

"Q. Yes, but you have been a ward of the court, haven't you?

"Mr. Norton: Just a moment.

"Q. And you were for a number of years? A. No.

"Q. How long were you a ward of the court? A. Not very long.

"Q. Why were you placed as a ward of the court?

"Mr. Norton: Just a moment.

"The Court: Sustained.

"Mr. Norton: Just a moment.

"The Court: Sustained.

"Q. When were you made a ward of the juvenile court of Saline County, Kansas?

"Mr. Norton: Objected to as incompetent, irrelevant and immaterial.

"Mr. Brettle: He said yesterday, Your Honor—

"The Court: I am going to sustain it because it isn't the best evidence. The record is right down in the juvenile court downstairs."

Upon rebuttal the state called the judge of the juvenile court, who testified as follows:

"Q. I will ask you to state whether or not you have any record of Calvin Homolka being made a ward of the juvenile court of Saline County, Kansas, on or about September, 1937? A. In December. October.

"Q. October. October, 1937?

"Mr. Norton: If Your Honor please, that is objected to as incompetent, irrelevant and immaterial. It is a collateral matter. Those boys admitted they had been wards of the juvenile court.

"The Court: Don't start to argue. Make your objection.

"Mr. Norton: That is the objection.

"The Court: Objection overruled, but gentlemen of the jury, this matter is being solely for the purpose of showing the credibility of the witness, Calvin Homolka. It has nothing whatever to do with the guilt or innocence of the defendant."

Appellant contends that it was error to permit the state to show, for any purpose, that the witness had been at one time a ward of the juvenile court. He relies principally upon section 38-415 of G. S. 1935, being a part of the juvenile court act—which provides:

"This act shall be liberally construed, to the end that its purposes may be carried out, to wit, that the care, custody and discipline of a child shall approximate, as nearly as may be, proper parental care; and in all cases where the same can be properly done, that a child may be placed in an approved family home, by legal adoption or otherwise. *And in no case shall any proceedings, order or judgment of the juvenile court, in cases coming within the purview of this act, be deemed or held to. import a criminal act on the part of any child;* but all proceedings, orders and judgments shall be deemed to have been taken and done in the exercise of the parental power of the state." (Italics supplied.)

It must first be noted that prior to the admission of the juvenile court record, to which appellant objects, Calvin Homolka, called as a witness by the defendant, had testified, without objection, that he had been a ward of the juvenile court. When the witness was asked *why* he had been made a ward of the court appellant objected and the objection was sustained. Upon being asked *when* he had been made a ward objection was again sustained, on the ground that the court record was the best evidence on that point. It thus appears that while appellant now complains of admission of the court record to show the witness had been a ward of the juvenile court he had already permitted the witness to so testify, without objection.

Section 38-415 makes clear that no proceedings *"within the purview of this act"* (the juvenile court act) shall be held to import a criminal act on the part of a child. It is the purpose of the juvenile court act to treat juvenile offenders not as criminals but as wards requiring parental care. Many expressions of this court, in upholding that act, have attested our sympathy with that fine purpose and with a liberal construction of the act in order to effectuate its intent. But the section relied upon by appellant simply declares that proceedings within the purview of the juvenile court act shall in no case be regarded as criminal in character or to import a criminal act on the part of a child. It does not deal with the question of

admissibility of evidence.. If the juvenile court record was improperly admitted it was improper upon grounds other than specific prohibition by section 38-415.

Appellant next calls our attention to the statement in Corpus Juris (70 C. J. 853) that "conviction as a delinquent child cannot be shown for purposes of impeachment *under a statute prohibiting such conviction from being used as evidence for any purpose* except in subsequent cases against the same child under the statute." (Italics ours.) The statement applies only to statutes which specifically prohibit conviction as a delinquent child from being used as evidence for any purpose (except as provided) and the examination of the cases cited in the foot-note in support of the statement shows that statutes with such specific provisions were involved. We have no such statute. It is true that section 60-2801, G. S. 1935, provides that conviction of a crime may be shown for the purpose of affecting the credibility of a witness and it may be argued that by inference the statute makes inadmissible a showing of juvenile delinquency, since such finding imports no criminal act under our juvenile court law. However, we do not find it necessary here to examine at length the general question of what may be shown in impeachment of the credibility of witnesses.

We conclude that the admission of the juvenile court record did not constitute reversible error, for two reasons: First, that the witness had already testified, without objection from appellant, that he had been a ward of the juvenile court; and second, because we cannot say that admission of the record so prejudiced appellant's rights as to require reversal. Two brothers of Calvin testified substantially as he did. The state offered no evidence to impeach their credibility. It may also be noted that appellant, for the purpose of impeaching the credibility of the state's principal witness, showed that he too had been a ward of the juvenile court. That record was gone into rather extensively by the defense. Accordingly, the jury had these facts, on both sides, before it. Not only does the statute (G. S. 1935, 62-1718) place upon us the duty of disregarding errors and defects in the trial proceedings unless it appears that substantial rights have been adversely affected thereby, but the rule has been applied in so many cases that citations are unnecessary. (See Hatcher's Digest, Appeal and Error, §§ 509, 522, 536.)

Appellant also complains in his brief of statements of the prosecuting attorney in argument to the jury. But they are not assigned as

error nor does the record disclose that appellant objected to them at the time or that he urged their impropriety on motion for a new trial. When the statements were made appellant only asked that the court again instruct the jury that the juvenile court record had been admitted solely for the purpose of affecting credibility. The court then said "I don't have to emphasize that again."

No error being found, the judgment is affirmed.